## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| NANCY R. IRWIN and <br> OLIVER MISSA, ) ) ) | |
| Plaintiffs, ) ) | Case No. 1:05CV01287 (EGS) |
| v. ) ) | ORAL ARGUMENT REQUESTED |
| WORLD WILDLIFE FUND, INC., ) ) | |
| Defendant. ) ) | |

### DEFENDANT WORLD WILDLIFE FUND, INC.'S
### MOTION TO DISMISS THE PLAINTIFFS' COMPLAINT
### ON THE GROUNDS OF *FORUM NON CONVENIENS*

The defendant World Wildlife Fund, Inc. ("WWF-US") hereby moves this Honorable

Court for an Order dismissing the Complaint of the plaintiffs Nancy R. Irwin and Oliver Missa,

in its entirety, pursuant to the doctrine of *forum non conveniens*.  The defendant WWF-US seeks

dismissal of this action in favor of a forum located in the Republic of Gabon, as Gabon

constitutes an adequate, alternative forum to hear this dispute and the balancing of the public and

private interest factors weigh heavily in favor of dismissal.

In support of this motion, WWF-US has submitted herewith (1) the Defendant World

Wildlife Fund, Inc.'s Memorandum of Points and Authorities in Support of its Motion to Dismiss

the Plaintiffs' Complaint on the Grounds of *Forum Non Conveniens*, (2) the September 15, 2005

Declaration of Mary Jane Jamar in Support of Defendant World Wildlife Fund, Inc.'s Motion to

Dismiss on the Grounds of *Forum Non Conveniens*; and, (3) the September 15, 2005 Declaration

of Josette Olendo in Support of Defendant World Wildlife Fund, Inc.'s Motion to Dismiss on the

Grounds of *Forum Non Conveniens*.

WHEREFORE, the defendant WWF-US prays that this Honorable Court dismiss the

plaintiffs' Complaint against WWF-US in its entirety.

DATED:  September 19, 2005

Respectfully submitted,

Robert A. Salerno (D.C. Bar # 430464)
DLA PIPER RUDNICK GRAY CARY US LLP
1200 Nineteenth Street, N.W.
Washington, DC  20036-2412
202-861-3900 (telephone)
202-223-2085 (fax)

-and-

*Of Counsel:*
Rodney E. Gould, Esq.
RUBIN, HAY & GOULD, P.C.
205 Newbury Street
P.O. Box 786
Framingham, MA  01701-0202
508-875-5222 (telephone)
508-879-6803 (fax)

Attorneys for Defendant
WORLD WILDLIFE FUND, INC.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| NANCY R. IRWIN and<br>OLIVER MISSA, | ) <br> ) <br> ) <br> ) |
| Plaintiffs, | ) Case No. 1:05CV01287 (EGS) <br> ) |
| v. | ) ORAL ARGUMENT REQUESTED <br> ) |
| WORLD WILDLIFE FUND, INC., | ) <br> ) |
| Defendant. | ) <br> ) |

### DEFENDANT WORLD WILDLIFE FUND, INC.'S
### MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
### ITS MOTION TO DISMISS THE PLAINTIFFS' COMPLAINT
### ON THE GROUNDS OF *FORUM NON CONVENIENS*

## I. INTRODUCTION

The plaintiffs, Nancy Irwin and Olivier Missa, neither of whom are residents or citizens

of the United States, allege that they were injured in a small boat accident halfway around the

world from the District of Columbia, in the N'dogo Lagoon in Gamba, Gabon. They claim that

the defendant, World Wildlife Fund, Inc. ("WWF-US"), is responsible for the accident through

acts or omissions in Gabon, in violation of Gabonese law. The plaintiffs apparently also allege

that even if a different Gabonese entity, Cecotour, performed the negligent acts in question,

Cecotour's actions are legally attributable to WWF-US.

Assuming the facts of the Complaint, *arguendo*,[1] WWF-US moves for dismissal of the plaintiffs' Complaint on the grounds of *forum non conveniens*. Other than WWF-US having its headquarters in the District of Columbia, there is no nexus between this forum and the facts of this case. The plaintiffs are not citizens or residents of the United States. All of the plaintiffs' claims are predicated on acts or omissions they allege took place, or should have taken place, in Gabon. Almost all of the critical evidence and witnesses are located in Gabon – indeed, we are not aware of any witnesses to the accident or the events leading up to the accident who reside in the United States. The accident was investigated in Gabon by local Gabonese authorities. Ms. Irwin's injuries were initially treated in Gabon (and based upon the Complaint she was not subsequently treated anywhere in the United States). Most importantly, the likely responsible party -- the driver of the other boat -- presumably resides in Gabon, is a citizen of Gabon, and cannot be impleaded into this United States action. For these reasons, the District of Columbia is a wholly inappropriate forum, and the entire litigation should be dismissed in favor of the courts of the Republic of Gabon.

## II. FACTUAL BACKGROUND

The Complaint seeks to describe the circumstances of a small boat accident that occurred on an inland waterway approximately 6,000 miles, as the crow flies, from the District of Columbia. Nancy Irwin ("Irwin") is a citizen of the United Kingdom who resides in Aberdeen, Scotland. (Complaint, ¶ 1.) Olivier Missa ("Missa"), her husband (id., ¶ 7), is a citizen of Belgium who also resides in Aberdeen, Scotland. (Id., ¶ 2.) The plaintiffs came to be in Gabon by virtue of their professional research activities, which they do not allege concerned the

---

[1] Some of the plaintiffs' allegations are incorrect and defendant will dispute them in due

defendant or were performed on the defendant's behalf.

The only named defendant in this action, World Wildlife Fund, Inc. ("WWF-US"), is a not-for-profit corporation organized under the laws of the State of Delaware, devoted to the conservation of nature, with its headquarters and principal place of business in Washington, D.C. (Declaration of Mary Jane Jamar in Support of Defendant World Wildlife Fund, Inc.'s Motion to Dismiss on the Grounds of *Forum Non Conveniens* ["Jamar Dec."], ¶ 3.) From July 1, 1995 through June 30, 2002, WWF-US managed on behalf of the WWF network a Central Africa Regional Program Office ("WWF-Gabon") located in Libreville, Gabon. (Id., ¶ 4.) WWF-Gabon, in turn, conducted local work from Gamba, a town located in the "Gamba Complex," a large, remote area along the Atlantic coast in southwest Gabon that became part of a national park in 2002. (Id., ¶ 7 (second paragraph).)[2]

According to the Complaint, Missa arrived in Gamba, Gabon, in January 2002 to work for a research program funded by the U.K.-based Shell Foundation. (Complaint, ¶ 7.) In May,

---

course.

[2] On July 1, 2002, WWF-US formally transferred the assets and management of WWF-Gabon to WWF-World Wide Fund for Nature ("WWF-International"). (Jamar Dec., ¶ 5.) This transfer was part of a planned series of transfers of African projects from WWF-US to WWF-International. (Id.) WWF-International is a Swiss foundation with its registered office at Avenue du Mont Blanc, CH-1196, Gland, Switzerland. (Id.) WWF-International is a separate, independent entity that is not owned, operated, managed or controlled by WWF-US. (Id.) WWF-International does not own, operate, manage or control WWF-US. (Id.) WWF-US, like other WWF "national organizations" throughout the world, licenses the "WWF" initials and panda logo from WWF-International. (Id.) WWF-International has no offices located in the United States. (Id.) Since July 1, 2002, WWF-US has had no ownership or management authority over the WWF office in Gabon, and therefore no legal ability to compel production of documents from this office nor to compel personnel from this office to provide testimony in a US legal proceeding. (Id., ¶ 8.)

Irwin traveled from Australia to Gamba to accompany her husband and continue her own research. (Id. ¶ 7 (second paragraph).)

The plaintiffs allege that in June of 2002, Missa arranged, through the Gabonese entity Cecotour,[3] for a trip in a small wooden boat on a lagoon adjacent to Gamba for himself, Irwin, and two others, (Complaint, ¶¶ 8- 9.) They apparently seek to attribute Cecotour's actions to WWF by alleging that Missa booked this trip with a WWF employee in WWF's Gabon office and was instructed to make payment to WWF there. (Id., ¶ 9.) Upon information and belief, neither Jean Bougeais ("Bougeais") nor any other person mentioned in the Complaint, including those alleged to have been WWF-US employees, reside in the United States or are located in the United States. (Jamar Dec., ¶ 7.) Bougeais is not currently employed by WWF-US. (Id.) Likewise, WWF-US does not currently employ any other person mentioned in the Complaint. (Id.)

According to the police report obtained by WWF-US,[4] at approximately 9:00 p.m. on June 28, 2002, a second boat piloted by Igor Bipakila ("Bipakila") and owned by Jean-Martin Rebellah ("Rebellah") hit the left side of the plaintiffs' boat, which was piloted by a Gabonese citizen, Jean-Flavien Tchibinda. (Id., ¶ 10 and Ex. B thereto.) The police report, which notes

---

[3] Cecotour was not in June 2002, or at any other time, a corporate affiliate or subsidiary of WWF-US. (Jamar Dec., ¶ 6.) We anticipate that the legal status of Cecotour (which the plaintiffs allege was an "unincorporated entity" (Complaint, ¶ 8)), its relation to WWF or other entities, and the extent to which its activities and contracts may be attributed to others, may be the subject of dispute among the parties. The resolution of these questions will likely depend upon the interpretation of Gabonese law.

[4] After receiving a copy of the Complaint in this action, WWF-US obtained a copy of the police report of the incident. (Jamar Dec., ¶ 9.) The original French version of the report is attached to the Jamar Declaration as Exhibit A and a certified translation of the same is attached to the Jamar Declaration as Exhibit B. (Id.)

4

that Rebellah's boat was neither registered nor insured and which contains a diagram of the accident, states that "[t]he responsibilities for this accident seem to fall on Igor Bipakila, pilot of the boat of Mr. Jean Martin Rebellah, for inattention and not observing the rules and spirit of maritime navigation code." (Id. and Exhibits A and B thereto.) The report also mentions that in addition to Irwin, Wim Bergmans ("Bergmans"), a citizen of Holland and Professor of Biology at the University of Holland, was severely injured. (Id.) According to the police report, another individual, Guy-Roger Moussinga, suffered light injuries. (Id.) The plaintiffs do not allege, nor could they, that any of these persons is a citizen or resident of the United States now or at the time of the accident.

The plaintiffs allege that the small wooden boat in which they traveled was inadequately prepared for the emergency because it did not have equipment required by Gabonese law. (Complaint, ¶¶ 11-14.) For example, they claim that the boat lacked navigational lighting required by Gabonese law. (Id., ¶ 11.) They also allege that the boat did not have a functioning radio and that the passengers were not offered or told to wear life jackets, both of which they also claim were requirements of Gabonese law. (Id.)

The remaining allegations in the plaintiffs' Complaint concern the attempts of local individuals and medical personnel located in Gabon, and elsewhere miles away from the United States, to tend to those injured in the accident. The plaintiffs allege that after the accident, the boat returned to shore; that emergency medical assistance was requested from a passing motorist (id., ¶ 14); that although medical assistance arrived from a nearby hospital, Irwin was refused entry because of her dire medical condition; that she was taken to Shell Gabon's medical center in Gabon and then taken via helicopter to a hospital in Port Gentil, Gabon (id., ¶ 15); and that

5

after she stabilized she was evacuated to a hospital in Johannesburg, South Africa. (Id.) The plaintiffs do not allege that any of these events occurred in the United States or under the direction, supervision, or even knowledge of anyone in the United States.

Under these facts, a clearer case for *forum non conveniens* can hardly be imagined.

### III. ARGUMENT

This case should be dismissed on the grounds of *forum non conveniens* in favor of litigation in the Republic of Gabon. In determining whether to grant a motion on the ground of *forum non conveniens*, a court must first determine whether the proposed alternative forum is adequate. Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 506-07 (1947); Pain v. United Technologies Corp., 637 F.2d 775, 784 (D.C. Cir. 1980). The court must then balance the private interests of the litigants in keeping the case in the District of Columbia or dismissing it in favor of the foreign court, and the interests of the public and the courts of the District of Columbia in keeping the case here. See Gilbert, 330 U.S. at 508-09; Dowling v. Richardson-Merrell, Inc., 727 F.2d 608, 612 (6th Cir. 1984).

### A.     AN ADEQUATE FORUM IS AVAILABLE IN GABON.

In the present case, the plaintiffs have an alternative forum to seek redress of their grievances -- the courts of the Republic of Gabon. In determining the suitability of an alternative forum in *forum non conveniens* analysis, courts examine whether the alternative forum is available (i.e., whether defendant(s) are "amenable to process" or are otherwise within the forum's jurisdiction) and whether the forum is adequate (i.e., whether the parties will be deprived of all remedies or treated unfairly). Piper Aircraft v. Reyno, 454 U.S. 235, 254 (1981); Gilbert, 330 U.S. at 507.

6

WWF-US, through the Declaration of Mary Jane Jamar, Vice President of Human

Resources and Facilities, has stated that it is willing to submit to the jurisdiction of the courts of

Gabon and is willing to waive any procedural obstacles in the plaintiffs' bringing of a lawsuit

against WWF-US in Gabon.[5]  With these concessions, WWF-US is amenable to process in

Gabon.  See BPA Int'l, Inc. v. Sweden, 281 F. Supp. 2d 73, 85 (D.D.C. 2003) (holding that

defendants met their burden by producing an affidavit from an attorney averring to the

defendants' amenability to jurisdiction in Sweden); Magnin v. Teledyne Continental Motors, 91

F.3d 1424, 1429 (11th Cir. 1996) (finding France to be an adequate alternative forum where

defendants had agreed to French jurisdiction); Watson v. Merrell Dow Pharmaceuticals, 769 F.2d

354, 356 (6th Cir. 1985) (noting that a defendant meets its threshold burden for entitlement to a

*forum non conveniens* dismissal by consenting to foreign jurisdiction).

     Second, the Republic of Gabon would be an adequate forum and would provide fair and

equitable remedies to the parties.  Gabonese law is based in large part upon the French civil law.

---

[5]WWF-US is willing to accept service of a civil suit brought against it by the plaintiffs in Gabon and is willing to waive any personal jurisdiction or other jurisdictional or venue defenses it could otherwise assert in a civil case brought against it in a court of competent jurisdiction in Gabon, provided that the action in Gabon is commenced within six months of the filing of a final order dismissing this action on the grounds of *forum non conveniens*. (Jamar Dec., ¶ 11.) Further, WWF-US agrees to waive any statute of limitations defense it would otherwise have in an action brought in Gabon, and also agrees to waive any requirement that the plaintiffs be required to post a bond in any civil litigation brought against WWF-US in Gabon, provided the action is commenced within six months of the filing of a final order dismissing this action on the grounds of *forum non conveniens*. (Id., ¶¶ 12, 13.) Gabonese law permits a defendant such as WWF-US to waive such a defense. (Declaration of Josette Olendo in Support of Defendant World Wildlife Fund, Inc.'s Motion to Dismiss on the Grounds of *Forum Non Conveniens* ["Olendo Dec."], ¶¶ 8, 9.) WWF-US further agrees to make any of its United States employees and documents available for litigation in Gabon, to the extent such testimony is relevant to the plaintiffs' claims or is otherwise reasonably calculated to lead to the discovery of admissible evidence. (Jamar Dec., ¶ 14.)

It is well established that that France is an adequate alternative forum. See, e.g., Dattner v. ConAgra Foods, Inc., No. 03-7534, 2004 U.S. Dist. LEXIS 3529 (2d Cir. Feb. 25, 2004); Gschwind v. Cessna Aircraft Co., 161 F.3d 602, 606-07 (10th Cir. 1998); Magnin v. Teledyne Continental Motors, 91 F.3d 1424, 1429 (11th Cir. 1996). Although it appears that no federal or state court has directly addressed the issue of whether the Republic of Gabon is an adequate forum,[6] Gabon's legal system is more than adequate under the standards applied by courts in analyzing the adequacy of similar foreign forums. The Gabonese legal system would allow plaintiffs to maintain an action against WWF-US to recover damages for injuries caused by WWF-US and sustained during the incident referred to in the plaintiffs' Complaint. (Declaration of Josette Olendo in Support of Defendant World Wildlife Fund, Inc.'s Motion to Dismiss on the Grounds of *Forum Non Conveniens* ["Olendo Dec."], ¶¶ 5-6.) Gabonese law recognizes claims that are similar or comparable to the claims in the Complaint, for example negligence and breach of contract. (Id., ¶ 6.) These types of claims are routinely heard by the courts in Gabon, and they represent a significant portion of the courts' business. (Id.) The trial court system in Gabon is comprised of nine trial courts, one for each province. (Id., ¶ 5.) Each trial court is divided into four parts – civil, penal, labor and merchant – and judges perform their tasks on a full-time basis

---

[6] In Dickson Marine Inc. v. Panalpina, Inc., 179 F.3d 331 (5th Cir. 1999), the Fifth Circuit affirmed the decision of the Eastern District of Louisiana in dismissing Louisiana plaintiffs' actions against two foreign corporations, one Gabonese and one Swiss. The court affirmed the dismissal of the case against the Gabonese defendant for lack of personal jurisdiction and affirmed the dismissal of the case against the Swiss defendant on *forum non conveniens* grounds. Id. at 343. Although the adequacy of a Gabonese forum was not specifically addressed because the Gabonese defendant had already been dismissed on jurisdictional grounds, in affirming the dismissal in favor of a Swiss forum the court noted that the transaction at issue was brokered in Switzerland and Gabon, the majority of the witnesses were located in Switzerland, documentary evidence was located in Switzerland and Gabon, and it appeared that Gabonese or Swiss law should be applied. Id.

and sit year round. (Id.)  In addition to trial courts, civil cases may be appealed to appellate courts and the Gabon Supreme Court. (Id.)  Foreign parties may bring lawsuits in Gabon based upon claims occurring in Gabon, provided they retain local Gabonese attorneys to represent their interests. (Id., ¶ 7.)  The Gabonese forum is more than adequate to provide the plaintiffs fair and equitable remedies.

So long as the law of the alternative forum meets the threshold standard of adequacy, it is well established that perceived differences in the substantive law or the comparative amount of recovery obtainable in the two alternative forums are not relevant factors. Piper, 454 U.S. at 248-49; Pain v. United Technologies Corp., 637 F.2d 775, 794 (D.C. Cir. 1980) (stating that "the comparative amount of recovery obtainable in the two alternative forums has never been considered a factor relevant to the *forum non conveniens* inquiry"); Empresa Lineas Maritimas Argentinas, S.A. v. Schichau-Unterweser, A.G., 955 F.2d 368, 371 (5th Cir. 1992) ("[A]bsent unfairness, differences in the law of the alternate forum are not a substantial factor to consider.").

Case law is uniform in holding that mere procedural differences, even if significant, do not render a proposed alternative forum inadequate. See, e.g., Zipfel v. Halliburton Co., 832 F.2d 1477, 1484 (9th Cir. 1987), cert. denied, 486 U.S. 1054 (1988) (finding a Singapore forum adequate although depositions were allowed only in certain limited circumstances); In re Union Carbide Gas Plant Disaster, 809 F.2d 195, 205 (2d Cir.), cert. denied, 484 U.S. 871 (1987) (finding Indian forum adequate although Indian discovery rules were more limited than United States rules); Stalinski v. Bakoczy, 41 F. Supp. 2d 755, 761-62, 762 n. 4 (S.D. Ohio 1998) (finding Honduras an adequate alternative forum where Honduran civil procedure provided for

9

direct and cross examination of witnesses through the submission of questions to the presiding judge, who had complete discretion regarding which questions to ask).[7]

The Republic of Gabon is plainly both available and adequate in the instant case. It is therefore an adequate alternative forum to hear the plaintiffs' claims against WWF-US.

## B.     THE PRIVATE AND PUBLIC INTEREST FACTORS FAVOR DISMISSAL.

If the balance of the private and public interest factors suggests that "trial in the chosen forum would be unnecessarily burdensome for the defendant or the court, dismissal is proper." Piper, 454 U.S. at 256, n.23. The District of Columbia's interest in this tort case is virtually nonexistent in comparison with that of Gabon, where the accident occurred, whose law applies, where potentially responsible parties are located, and where virtually all of the witnesses and documents are located. An analysis of the various factors indicates that this case is best brought in a court in the Republic of Gabon.

At the outset it is important to note that any presumption the plaintiffs might otherwise enjoy is diminished by the fact that neither plaintiff is a resident of this forum, or of any forum within the United States. Irwin is a citizen and resident of the United Kingdom, residing in Aberdeen, Scotland. (Complaint, ¶ 1.) Missa is a citizen of Belgium and a resident of the United Kingdom, residing in Aberdeen, Scotland. (Id., ¶ 2.) "While a plaintiff's choice of forum is

---

[7]Indeed, even the lack of a jury trial is insufficient to render a forum inadequate. See, e.g., Lockman Foundation v. Evangelical Alliance Mission, 930 F.2d 764, 768 (9th Cir. 1991) (holding that the lack of a jury trial in Japan did not render it an inadequate forum); In re Union Carbide, 809 F.2d at 199, 202  (lack of jury trial in India did not render it an inadequate forum).

usually given a strong presumption, this factor carries much less weight when the plaintiff is also a stranger to the forum." BPA Int'l, Inc. v. Sweden, 281 F. Supp. 2d 73, 85 (D.D.C. 2003). See also Piper, 454 U.S. at 255-56 ("the presumption applies with less force when the plaintiff or real parties in interest are foreign").

1.     **The private interest factors favor dismissal.**

In deciding a *forum non conveniens* motion, courts examine the following private interest factors: (1) the relative ease of access to sources of proof; (2) the availability of process for compelling unwilling witnesses; (3) the cost for obtaining attendance of willing witnesses; (4) the possibility of inspecting the premises, if appropriate; and, (5) all other practical problems that make trial of a case easy, expeditious and inexpensive. Gilbert, 330 U.S. at 508. These factors uniformly favor a Gabonese forum.

The plaintiffs assert claims against WWF-US for breach of contract and negligence, both predicated solely on conduct in Gabon. Yet the most likely potentially responsible parties are not in this lawsuit -- the pilot and owner of the boat which struck the boat in which the plaintiffs were passengers. According to the local police report, the pilot of the other boat was Igor Bipakila and the boat was owned by Jean Martin Rebellah. (See Jamar Dec., Exhibit B.) The translated police report states that "[t]he responsibilities for this accident seem to fall on Igor Bipakila, pilot of the boat of Mr. Jean Martin Rebellah, for inattention and not observing the rules and spirit of maritime navigation code." (Id.)

WWF-US has no ability to implead any of these individuals -- by all accounts Gabonese residents with no presence in this forum or anywhere else in the United States -- in the present lawsuit. The inability of WWF-US to implead the operator and owner of the other boat involved

11

in the accident weighs heavily in favor dismissal since their presence in the case is essential for a just adjudication. <u>Piper</u>, 454 U.S. at 267-68 (finding that an inability to implead third-party defendants "clearly supported" dismissal even though separate action for indemnity could be brought); <u>DeMelo v. Lederle Labs.</u>, 801 F.2d 1058, 1063 (8th Cir. 1986) (defendant's inability to implead potential third-party defendants strongly favored dismissal so all claims could be litigated together in Brazil); <u>Fraizer v. St. Jude Medical, Inc.</u>, 609 F. Supp. 1129, 1131 (D. Minn. 1985) ("[T]he inability to implead potential third-party defendants prevents St. Jude from presenting an effective defense in this court."). As set forth by the District of Columbia Circuit in <u>Pain</u>:

> The second major factor of private interest militating in favor of dismissal in this case is UTC's inability to implead the third-party defendant (Helikopter) in a liability action in this country. Joinder of Helikopter is crucial to the presentation of UTC's defense in this country, for if it could be shown that the accident was caused not by any defect in design or manufacture of the aircraft but by negligent maintenance or operation of the aircraft, UTC would be relieved from liability altogether.

<u>Pain</u>, 637 F.2d at 790-91 ("Clearly, the inability of the district court to accord full relief suggests that it is inferior to a forum which might possess jurisdiction over all significant parties to the dispute.").

The presence of witnesses also favors dismissal in favor of a Gabonese forum. Simply put, there are <u>no</u> witnesses located in the United States who have any knowledge of the events surrounding the accident at issue. Indeed, the only conceivable witnesses in the United States are possibly certain WWF-US employees who could testify to WWF-US's relationship with WWF-Gabon or WWF-International. On July 1, 2002, WWF-US transferred the assets and

12

management of WWF-Gabon to WWF-International, and WWF-US does not currently employ

any individuals identified by the plaintiffs in their Complaint. (Jamar Dec., ¶¶ 5, 7.)

On the other hand, the pilot and owner of the boat that struck the boat transporting the

plaintiffs, the pilot of the plaintiffs' boat, the other passengers on the boats, the police and other

local investigators, the medical personnel at Shell Gabon and in Port Gentil, and likely also the

passing motorists who allegedly witnessed the immediate aftermath are all located in Gabon, or

at least nowhere in the United States. None is subject to the subpoena power of this or any other

United States court, and none can be compelled to attend trial, even though they are the

individuals with first-hand knowledge of the accident and its aftermath. The fact that significant

non-party witnesses that are crucial to WWF-US's case are in Gabon, and therefore beyond the

ability of this Court to compel their attendance in court proceedings, means that WWF-US would

be "substantially disadvantaged" in its ability to defend this action in this forum:

> To fix the place of trial at a point where litigants cannot compel personal
> attendance and may be forced to try their cases on deposition, is to create a
> condition not satisfactory to the court, jury or most litigants.

Gilbert, 330 U.S. at 511. See also BPA Int'l, Inc., 281 F. Supp. at 86 ("Because [plaintiff's]

claims arose out of actions occurring in Sweden, access to sources of proof would be much easier

if the case were heard in Sweden rather than Washington, D.C. Many, if not most, of the

potential witnesses and much of the evidence will likely be located in Sweden and therefore will

likely be beyond the reach of this Court's compulsory process."); In Re Union Carbide Corp. Gas

Plant Disaster at Bhopal, India, 634 F. Supp. 842, 859 (S.D.N.Y. 1986), aff'd, 809 F.2d 195 (2d

Cir.), cert. denied, 484 U.S. 871 (1987) (emphasizing the heavy disadvantage where key

witnesses are foreigners beyond subpoena power of United States courts, who are unlikely to be

13

willing to travel to the United States to testify, and, in any event, where the cost of transporting

them here would be "prohibitively great");[8] Iragorri v. International Elevator, Inc., 203 F.3d 8, 17

(1st Cir. 2000) ("[W]e have emphasized in an analogous context that 'the live testimony of [key]

witnesses for the purposes of presenting demeanor evidence [is] essential to a fair trial.'") (citing

Howe v. Goldcorp Invs., Ltd., 946 F.2d 944, 952 (1st Cir. 1991)); Overseas Nat'l Airways, Inc. v.

Cargolux Airlines Int'l, 712 F.2d 11, 12 (2d Cir. 1983) (dismissing action because all the key

witnesses, including official and private investigators, were residents of Europe); Travelers

Indem. Co v. S/S Alca, 710 F. Supp. 497, 501 (S.D.N.Y.), aff'd without op., 895 F.2d 1410 (2d

Cir. 1989) (plaintiff, a Connecticut corporation, sued two foreign defendants for damage to a

shipment sent from the United States via Turkey; the motion to dismiss granted because the

witnesses, including government investigators and their reports, were in Turkey).

　　　The fact that all key evidence and witnesses – except for the United Kingdom-based

plaintiffs -- are located in Gabon weighs strongly in favor of Gabon as the forum.  Since July 1,

2002, WWF-US has had no ownership or management authority over any WWF office in Gabon,

and therefore no legal ability to compel production of documents from Gabon or to compel

personnel from Gabon to provide testimony in a United States legal proceeding.  (Jamar Dec., ¶

8.)  See, e.g., BPA Int'l, Inc., 281 F. Supp. 2d at 86; Nolan v. Boeing Co., 919 F.2d 1058 (5th

Cir. 1990) (England held the appropriate forum because accident occurred in England, evidence

was in England, witnesses were in England and beyond compulsory process, and third parties

---

　　　[8]Even those witnesses who might otherwise appear voluntarily might not be willing to
travel to the United States, or the cost of paying them to do so would be extraordinary.  For
example, expert witnesses competent to testify about either the Gabonese law or the prevailing
standards applicable to the plaintiffs' core allegations that the boat was inadequately equipped
and its operator inadequately trained would surely be located in Gabon.

could not be impleaded in U.S.); <u>DeMelo</u>, 801 F.2d at 1063 (as "long as the trial was to be conducted in the United States, the inability of both parties to obtain the full panoply of relevant . . . evidence would greatly hinder fair resolution of the dispute"); <u>Union Carbide</u>, 634 F. Supp. at 858 (granting defendant's *forum non conveniens* motion because the bulk of the evidence on liability was in India).

Moreover, given that this case involves a boat accident on a riverway in a lagoon, conducting a view of the accident scene would be appropriate. The placement of the boats at the time of the accident, the width of the water passage at the location of the accident and rocks or other obstructions affecting visibility are all important factors addressing the issue of liability.[9] It would be impossible to conduct such a viewing if the trial of this case is conducted in the District of Columbia.

The final private interest factor -- keeping the litigation of the case easy, expeditious, and inexpensive -- also weighs in favor of Gabon because, as described above, virtually all witnesses, documents, relevant objects, and parties are located or can be easily obtained in Gabon. Litigating this matter in the District of Columbia would require enormous expense to be incurred merely to obtain the necessary evidence and depose relevant witnesses, to the extent they could be deposed.

2.     **<u>The public interest factors also favor dismissal.</u>**

As set forth by the United States Supreme Court, the public interest factors to be examined in *forum non conveniens* analysis include the following:  (1) administrative difficulties

_____

[9]The police report itself includes a diagram reconstructing the accident, showing the relative dimensions of the river and the local landmarks, indicating that the local authorities thought such issues were important.  (<u>See</u> Jamar Dec., Exhibit A.)

15

caused by foreign litigation congesting local court dockets; (2) local interest in having localized controversies decided at home; (3) imposing jury duty on residents of a jurisdiction having little relation to the case; and, (4) avoiding unnecessary problems in choice-of-law and the application of foreign law.  See Gilbert, 330 U.S. at 509-10.

The jurisdiction with the greater interest should bear the burden of entertaining the litigation.  Gabon has far closer ties to the incident than the District of Columbia since the accident took place there, Gabonese authorities investigated it, Gabonese laws may be implicated (as alleged by the plaintiffs in their Complaint), and the plaintiff Irwin was treated at two separate facilities in Gabon, as well as in Johannesburg, South Africa.  The fact that there was a police investigation into the incident demonstrates the acute interest that Gabon has in the outcome of this lawsuit. See Union Carbide, 634 F. Supp. at 863.   This is essentially a two-vehicle tort case that, had it occurred in the United States, would plainly be judged by local law applying local standards and local knowledge of the circumstances.  It is the epitome of a "localized controversy."  It is not a large disaster involving widespread injuries or dispersed, international actors that may implicate broader United States interests -- though courts have applied the forum non conveniens doctrine in favor of local courts even in such cases.  See generally In re Union Carbide, supra.  For all these reasons, a Gabonese court has by far the more compelling interest in resolving this case.

Courts acknowledge that the administrative difficulties imposed upon a court "associated with trying a case in a forum located thousands of miles away from the majority of witnesses and the evidence are obvious." Gonzalez v. Naviera Neptuno A.A., 832 F.2d 876, 879 (5th Cir. 1987) (reversing denial of defendants' *forum non conveniens* motion in favor of a Peruvian

16

forum).  Administrative difficulties also abound when potential witnesses do not speak English.

See, e.g., Stalinski, 41 F. Supp. 2d at 764 (noting that the need to apply a different language

weighs in favor of dismissal).  French is the national language of Gabon and is the language used

in the Gabonese legal system.  (Olendo Dec., ¶ 4.)  We expect that most of the factual witnesses

speak French and not English.  As such, the administrative difficulties in prosecuting this action

in the District of Columbia weigh in favor of a Gabonese forum.

      Gabon, the site of the accident, also has a much stronger interest than the District of

Columbia in deterring any conduct deemed to have caused the accident.  The plaintiffs allege that

the boat in which they were traveling lacked navigational lighting and that the passengers were

not offered or told to wear life jackets, both allegedly violations of Gabonese law.  (Complaint, ¶

11.)  The police report concludes that the other boat, piloted by Bipakila, failed to follow "the

rules and spirit of the maritime navigation code."  (See Jamar Dec., Exhibit B.)  Gabon has a

much stronger interest than the United States in ensuring that its navigational laws are followed.

Moreover, if the cause of the accident was the conduct of the other boat pilot -- as suggested in

the police report -- Gabon has an interest in ensuring that its residents not operate watercraft on

Gabonese waters in a negligent manner.  Gabon has a further interest in ensuring that visitors and

others conducting research in the Gamba Complex (a national park) be provided safe

transportation.

      While WWF-US is headquartered in Washington, D.C., the mere fact that some minimal

interest is found in the original forum is not sufficient to warrant denial of a *forum non*

*conveniens* motion.  See Gonzalez, 832 F.2d at 879 (finding that dismissal was warranted in

favor of Peru even though the State of Texas had an interest in maintaining safe conditions on

17

board vessels temporarily docked in Texas).  Trial in the District of Columbia would provide at

best "incremental deterrence" that would not be worth "the enormous commitment to judicial

time and resources that would inevitably be required if the case were to be tried here." Piper, 454

U.S. at 260-61.

As to the fourth factor --  avoiding unnecessary problems in choice-of-law and the

application of foreign law -- disputes should be resolved in a court "that is at home with the law

that must govern the action." Gilbert, 330 U.S. at 509; De Melo, 801 F.2d at 1064.  Not only

have the plaintiffs alleged violations of Gabonese law in the maintenance and operation of the

boat which transported the plaintiffs (Complaint, ¶ 11), but under a choice of law analysis, the

laws of Gabon would apply to both the plaintiffs' negligence and breach of contract claims

against WWF-US because Gabon is the jurisdiction which has the "more substantial interest" in

the resolution of the issues.  See YWCA v. Allstate Ins. Co., 275 F.3d 1145, 1150 (D.C. Cir.

2002) (citing Nationwide Mut. Ins. Co. v. Richardson, 270 F.3d 948, 953 (D.C. Cir. 2001)).

Gabon law would also likely determine whether Cecotour had successfully established itself as

an independent Gabonese entity and therefore whether its actions can or cannot be attributed to

WWF.  Given the fact that the accident took place in Gabon, that the alleged contract for the trip

was entered into in Gabon, that the plaintiff Irwin was initially treated for her injuries in Gabon,

that the Gamba Complex in Gabon where the accident occurred is a national park (Complaint, ¶

7), and that the pilots of the boats involved in the accident were Gabonese, Gabon is the

jurisdiction with the more substantial interest in the issues and a court in Gabon is in the best

position to interpret and apply its law.  See Howe, 946 F.2d at 952 (finding that a Canadian court

is in the best position to interpret and apply Canadian law to matters principally of concern to

18

Canada). While the citizenship and residence of the plaintiffs may be a factor in choice of law analysis, that factor is neutral as between the United States and Gabon, since neither plaintiff is a citizen or resident of the United States or Gabon.

For these reasons, both the private and public interest factors overwhelmingly favor dismissal of this litigation in favor of a Gabonese forum.

## IV. CONCLUSION

This litigation should be dismissed in favor of a Gabonese forum under the doctrine of *forum non conveniens*. The weight of the private and public interest factors tilt overwhelmingly in favor of a Gabonese forum, and the courts of Gabon constitute an adequate, alternative forum to hear this dispute.

Respectfully submitted,

Robert A. Salerno (D.C. Bar # 430464)
DLA PIPER RUDNICK GRAY CARY US LLP
1200 Nineteenth Street, N.W.
Washington, DC  20036-2412
202-861-3900 (telephone)
202-223-2085 (fax)

-and-

*Of Counsel:*
Rodney E. Gould, Esq.
RUBIN, HAY & GOULD, P.C.
205 Newbury Street
P.O. Box 786
Framingham, MA  01701-0202
508-875-5222 (telephone)
508-879-6803 (fax)

Attorneys for Defendant
WORLD WILDLIFE FUND, INC.

19

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing DEFENDANT WORLD WILDLIFE FUND INC.'S MOTION TO DISMISS THE PLAINTIFFS' COMPLAINT ON THE GROUNDS OF FORUM NON CONVENIENS, the MEMORANDUM OF POINTS AND AUTHORITIES in support thereof, and proposed ORDER were served electronically this 19th day of September, 2005, in accordance with the Court's procedures for Electronic Case filing.

Robert A. Salerno