**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF COLUMBIA**

_____

|  |  |  |
|---|---|---|
| NANCY R. IRWIN and | ) | Case No. 1:05CV01287 (EGS) |
| OLIVER MISSA, | ) | |
|  | ) | |
| Plaintiffs, | ) | |
|  | ) | |
| v. | ) | |
|  | ) | |
| WORLD WILDLIFE FUND, INC., | ) | |
|  | ) | |
| Defendant. | ) | |

_____)

**DEFENDANT WORLD WILDLIFE FUND, INC.'S REPLY MEMORANDUM IN
SUPPORT OF ITS MOTION TO DISMISS THE COMPLAINT
ON THE GROUNDS OF _FORUM NON CONVENIENS_**

## I.    INTRODUCTION

The plaintiffs' opposition to our motion to dismiss is predicated in major part on the

argument that Nancy Irwin, a citizen and resident of the United Kingdom, is so severely injured

that her stay in Gabon for the trial of this matter after traveling from Scotland to Gabon could be

more traumatic to her than staying in the Washington, D.C. area after traveling from Scotland to

Washington.  Of course, plaintiffs concede that Irwin will experience exactly the same risks in

the air travel between Scotland and the United States as she would between Scotland and Gabon.

Not surprisingly, this argument is bereft of case law support, since the argument in

essence is that anytime an injured or ill foreign national is confronted with a _forum non_

_conveniens_ motion, the motion should be denied because no country has medical care

comparable to that in the United States.

Plaintiffs make two other equally unavailing arguments.  They say their "evidence" of the liability of World Wildlife Fund, Inc. ("WWF-US") – evidence concededly based on hearsay, speculation, surmise and guesswork – is so overwhelming that summary judgment should properly be granted by a court in Gabon under Gabonese law.  Therefore our concerns about impleading potentially responsible Gabonese parties or having those parties called as witnesses (including the pilot of the boat cited by the police as having caused the accident), viewing the scene, or obtaining discovery in Gabon are irrelevant, the only issue being the amount of damages to be awarded to the plaintiffs.  Finally, they simply declare that their medical and Gabonese law arguments somehow excuse the court from analyzing public interest factors as is required in a *forum non conveniens* analysis.

The totality of the plaintiffs' arguments is woefully insufficient.  In essence they argue that under Gabonese law they win their case.  As a result, there is little or no need for testimony from the pilot of the boat which caused the accident, since all that is necessary to prove liability are the naked allegations asserted in the plaintiffs' brief.[1]   If in fact the case is as overwhelming as the plaintiffs claim, they have a simple case to present in Gabon and unquestionably could do it in short order with no need for Irwin even to appear.

In any event, none of the plaintiffs' arguments, more fully discussed infra, refute the fact that the balancing of the public and private interest factors overwhelmingly favor dismissal in favor of a Gabonese forum.  WWF-US's motion should be granted.

---

[1] We, of course, dispute much of the plaintiffs' analysis, including WWF-US's ultimate liability, but that is hardly an issue for a *forum non conveniens* motion.

## II.     ARGUMENT

### A.     PLAINTIFFS VIRTUALLY CONCEDE THAT AN ADEQUATE ALTERNATIVE FORUM EXISTS WITHIN GABON FOR HEARING THIS DISPUTE.

As demonstrated in detail in our moving brief, supported by an affidavit from a practicing Gabonese attorney, a Gabonese forum meets the requirement that an alternative forum be both "available" and "adequate."  Yet the plaintiffs attempt to counter the adequacy of the Gabonese forum with a State Department report submitted to Congress in March 2005, which, inter alia, states that Gabonese Security forces "reportedly beat and tortured prisoners and detainees," that "arbitrary arrest and detention remained concerns," that "the judiciary remained subject to government influence," and that the Gabonese legal system is "slow, inefficient and subject to corruption."[2]

Plaintiffs however concede that courts in this district and elsewhere routinely hold that these kinds of generalized allegations of corruption do not establish that a foreign forum is inadequate.  See, e.g., El-Fadl v. Central Bank of Jordan, 75 F.3d 668, 678 (D.C. Cir. 1996) ("A foreign forum is not inadequate merely because it has less favorable substantive law, because it employs different adjudicative procedures or because of general allegations of corruption in the judicial system.").  Moreover, plaintiffs fail to set forth any facts demonstrating that any of these concerns would or could affect this tort and contract case if it were litigated in Gabon, assuming arguendo that the State Department report on Gabon is correct.  Cf. El-Fadl, 75 F.3d at 678

_____

[2]  In their brief, the plaintiffs also cite to the fact that in Gabon "a large proportion of the population remains poor" and that "[r]oads are hazardous, and travelers may encounter civil unrest, violent crime, and carjackings."  We fail to see any support for the proposition that these factors, even if true, bear any weight in the *forum non conveniens* analysis presently before the Court.

(noting that plaintiff's repeated reliance on a State Department report expressing "concern about the impartiality" of Jordanian courts did not render that forum inadequate).

This is most definitely not a criminal case, nor is it a political case brought against the government of Gabon.  The plaintiffs have not alleged that they would be treated differently by the government of Gabon due to any political affiliation they might have.  The non-profit defendant, WWF-US, is a private entity, and there is no allegation that WWF-US is in a position to exert any influence over civil court proceedings in Gabon.[3]  In short, the plaintiffs' allegations concerning the political situation in Gabon, assuming they are accurate, are <u>precisely</u> the type of "general allegations of corruption in the judicial system" which are insufficient to dispute the adequacy of an alternative forum.  See, e.g., <u>Atlantic Tele-Network, Inc. v. Inter-American Dev. Bank</u>, 251 F. Supp. 2d 126, 137 (D.D.C. 2003) (Jackson, J.) (holding that allegations of delays and potential corruption of Guyanese legal system did not change conclusion that plaintiff could receive adequate and satisfactory remedy in the forum); <u>Mutambara v. Lufthansa German Airlines</u>, 2003 U.S. Dist. LEXIS 5755, at *7 (D.D.C. Mar. 24, 2003) (Urbina, J.) ("Nor should a court consider a foreign forum inadequate merely because it employs different adjudicative procedures or because of general allegations of corruption in the judicial system.").

So too <u>Polanco v. H.B. Fuller Co.</u>, 941 F. Supp. 1512 (D. Minn. 1996).  There, the plaintiff alleged that Guatemala was an inadequate forum to hear her product liability case

---

[3]  The instant case is obviously distinguishable from <u>Eastman Kodak Co. v. Kavlin</u>, 978 F. Supp. 1078 (S.D. Fla. 1997), which held that Bolivia was not an adequate forum.  There, the plaintiffs' substantive claims were directly related to allegations of corruption of the Bolivian judiciary and the defendants' improper use of such a system.  Because the allegations of corruption were intertwined with plaintiffs' causes of action against the defendants, the plaintiffs' extensive evidence of such corruption throughout the judiciary in response to the defendants' *forum non conveniens* motion was sufficient for the court to determine that Bolivia was not an adequate forum for that particular dispute.

because of Guatemala's failure to respect basic human rights.  The court cited plaintiff's

evidence as follows:

> The historical picture consists, then, of a nation which has always paid some lip
> service to democratic forms and institutions, even while ruled by absolute
> dictators, but has no real respect for law and individual rights and due process
> which are necessary for any functioning democratic government.

Polanco, 941 F. Supp. at 1525 (quoting 7 Modern Legal Systems Cyclopedia, § 1.3 (1988)).  But,

in rejecting plaintiff's contention and granting the defendants' *forum non conveniens* motion, the

court stated:

> Much of the plaintiff's evidence gives the court pause.  Were these proceedings
> related to a plea for asylum, or perhaps a civil claim brought by victims tortured
> by Guatemala's military, this would be a different case.  But that case is not
> before the Court.  Rather, the question is whether civil justice is capable of
> providing some redress for the death of plaintiff's decedent.

Polanco, 941 F. Supp. at 1525.  Here, the plaintiffs have also failed to establish any evidence that

the courts of Gabon would not provide redress for plaintiffs' civil tort and contract claims

against WWF-US.[4]

---

[4] The overwhelming majority of courts addressing the "alternate forum is too corrupt to be
adequate" argument have rejected such claims as a means of preventing a *forum non conveniens*
dismissal.  See, e.g., Blanco v. Banco Industrial de Venezuela, S.A., 997 F.2d 974, 981-82 (2d
Cir. 1993) (holding that a foreign forum is not inadequate merely because of general allegations
of corruption in the judicial system); Mercier v. Sheraton Int'l, Inc., 981 F.2d 1345, 1351 (1st
Cir. 1992), cert. denied, 508 U.S. 912 (1993) (holding that Turkey was an adequate forum
despite plaintiff's claim that Turkish courts were extremely biased against Americans and
foreign women); Abdullahi v. Pfizer, Inc., 2005 U.S. Dist. LEXIS 16126, at *44-*45 (S.D.N.Y.
Aug. 9, 2005) (rejecting allegations that Nigerian judiciary was too corrupt and biased to be
considered an adequate alternative forum based upon State Department reports, newspaper
articles and evidence of proceedings from an unrelated case); Aguinda v. Texaco, Inc., 142 F.
Supp. 2d 534, 544-45 (S.D.N.Y. 2001), aff'd, 303 F.3d 470 (2d Cir. 2002) (finding State
Department reports containing "conclusory assertions as to the relative corruptibility or
incorruptibility of Ecuadorian courts, with scant references to specifics, evidence or application
to the instant cases" to be of "little use"); Stalinski v. Bokoczy, 41 F. Supp. 2d 755, 761 (S.D.
Ohio 1998) (finding broad accusations of corruption in Honduras, supported by U.S. State

Significantly, plaintiffs concede that Gabon is an available and adequate forum because it would not deny them access to its judicial system on the claims asserted in their Complaint. (Opposition Brief, p. 18, n.12.)   It is undisputed that Gabonese law provides remedies for the causes of action alleged in the plaintiffs' Complaint.  (See First Declaration of Josette Olendo ["Olendo Dec."], ¶¶ 5-6; Erangah Dec., Plaintiffs' Opp. Ex. C, ¶ 3.)  In this manner, the instant case is distinguishable from El-Fadl, supra, where the court remanded the case as to the issue of the adequacy of Jordan as an alternative forum, not because of generalized allegations of corruption, but because of a particular Jordanian statute which prohibited the plaintiff from bringing his specific causes of action in Jordan.  El-Fadl, 75 F.3d at 677-78.  Given that the defendant WWF-US is willing to submit to the jurisdiction of the courts of Gabon and is willing to waive any procedural obstacles in the plaintiffs' bringing of a lawsuit against WWF-US in Gabon (Jamar Dec., ¶¶ 11-14), and given that the judicial system in Gabon accepts such waivers, (Olendo Dec., ¶¶ 8-9), making WWF-US amenable to process in Gabon, there is no dispute that Gabon is an adequate, alternative forum to hear this suit.[5]

---

Department reports and statements by the Attorney General of Honduras, insufficient to render Honduras an inadequate forum); Banco Mercantil, S.A. v. Hernandez Arencibia, 927 F. Supp. 565, 567-68 (D.P.R. 1996) (holding that plaintiff's evidence of corruption of Dominican Republic legal system, evidence which included an affidavit from an attorney, newspaper articles and editorials, was insufficient to establish that the Dominican Republic was an inadequate alternative forum).

[5] See BPA Int'l, Inc. v. Sweden, 281 F. Supp. 2d 73, 85 (D.D.C. 2003) (Collyer, J.) (approving affidavits averring to defendants' amenability to jurisdiction in a foreign country); Magnin v. Teledyne Continental Motors, 91 F.3d 1424, 1429 (11th Cir. 1996) (same); Watson v. Merrell Dow Pharmaceuticals, 769 F.2d 354, 356 (6th Cir. 1985) (same).

**B.**     **THE FOREIGN PLAINTIFFS' CHOICE OF AN AMERICAN FORUM IS NOT
ENTITLED TO DEFERENCE WHERE THE ACCIDENT OCCURRED IN
GABON AND THERE IS NO AMERICAN NEXUS TO THE EVENT.**

It is undisputed that Irwin is a citizen and resident of the United Kingdom, residing in

Aberdeen, Scotland.  (Complaint, ¶ 1.)  It is further undisputed that Missa is a citizen of Belgium

and a resident of the United Kingdom, residing in Aberdeen, Scotland.  (Id., ¶ 2.)  Despite the

fact that the plaintiffs are "strangers" to this forum, see BPA Int'l, Inc, 281 F. Supp. at 85, and

despite the fact that the operative events in this case all concededly occurred in Gabon, the

plaintiffs argue that the court should defer to their choice of forum.

The Supreme Court has held the presumption generally accorded a plaintiff's choice of

forum applies with less weight when the plaintiff is foreign.  Piper Aircraft Co. v. Reyno, 454

U.S. 235, 255-59 (1981).  Courts in this District have echoed this sentiment in numerous cases.

See, e.g., BPA Int'l, 281 F. Supp. at 85-86 ("While a plaintiff's choice of forum is usually given

a strong presumption, this factor carries much less weight when the plaintiff is also a stranger to

the forum."); BCCI Holdings (Luxembourg) v. Mahfouz, 828 F. Supp. 92, 95-99 (D.D.C. 1993)

(same); Poole v. Brown, 706 F. Supp. 74, 76 (D.D.C. 1989) (noting that because the central

purpose of any *forum non conveniens* inquiry is to ensure that the trial is convenient, a foreign

plaintiff's choice deserves less deference); In re Disaster at Riyadh Airport, 540 F. Supp. 1141,

1144-45 (D.D.C. 1982) (holding that the presumption in favor of the initial forum choice applies

with "less than maximum force when the real parties in interest are foreign").[6]  This is

---

[6]  See also Monegasque de Reassurances S.A.M. (Monde Re) v. Nak Naftogaz of Ukraine,
311 F.3d 488, 498 (2d Cir. 2002); Leon v. Millon Air, Inc., 251 F.2d 1390,  1314-15 (11th Cir.
2001); Kamel v. Hill Rom Co., 108 F.3d 799, 803 (7th Cir. 1997).

7

particularly relevant where, as here, the operative facts and the nexus of the litigation occurred outside of the United States.

The cases cited by the plaintiff do not compel deference to their chosen forum. While the plaintiffs cite to <u>Murray v. British Broadcasting Corp.</u>, 81 F.3d 287 (2d Cir. 1996) for the proposition that at least "some weight" should still be given to a foreign plaintiff's choice of forum, the <u>Murray</u> court still affirmed the dismissal of the case on *forum non conveniens* grounds, even though the plaintiff argued that he was entitled to deference on his forum choice based upon the provisions of the Bern Convention for the Protection of Literary and Artistic Works. <u>Id</u>. at 290-92. In <u>R. Maganlal & Co. v. M.G. Chem. Co., Inc.</u>, 942 F.2d 164 (2d Cir. 1991), while the court reversed a *forum non conveniens* dismissal, the court's decision was not based upon the weight given to the foreign plaintiff's choice of forum, but rather the trial court's analysis of the private interest factors. Since the appeals court held that the central issue was the conformity of goods shipped from the United States, and all of the documentary evidence and witness on the issue of conformity were located in the United States, the existence of witnesses and evidence in India was not sufficiently weighty to disrupt a chosen forum in the United States. <u>Id</u>. at 168-69. In <u>Lony v. E.I. Du Pont de Nemours & Co.</u>, 935 F.2d 604 (3d Cir. 1991), the primary issue supporting reversal of the *forum non conveniens* dismissal was the fact that the case had already been extensively litigated in pretrial discovery on the merits. <u>Id</u>. at 613.

In summary, even if the plaintiffs' chosen forum is entitled to some weight, it is entitled to substantially less weight than if the plaintiffs were American, and the balancing of the public and private interest factors still favors a Gabonese forum.

C.    **BOTH THE PUBLIC AND PRIVATE INTEREST FACTORS WEIGH IN IN FAVOR OF A GABONESE FORUM.**

As set forth in detail in our moving brief, both the private and public interest factors used in *forum non conveniens* analysis favor a Gabonese forum.  In particular, we address the following factors brought up by the plaintiffs in their opposition brief:

1.    **The private interest factors favor dismissal.**

    (a)    **Irwin's alleged health concerns about litigating in Gabon do not outweigh the stated reasons favoring a Gabonese forum.**

The plaintiffs' primary argument against dismissal in favor of a Gabonese forum is Irwin's present medical condition.  The argument, boiled down to its essentials, is that Irwin has serious medical conditions that could be exacerbated by air travel anywhere,[7] and that Washington will provide better medical facilities to treat potential post-arrival complications than the forum where the accident occurred and whose law she seeks to apply.  (We do note that with regard to Irwin's concerns about air travel itself, her concerns are equally applicable to both the United States and Gabon.)

While WWF-US is sympathetic to Irwin's condition, we are not aware of any case which holds that the medical condition of a plaintiff trumps the balancing of private and public interest factors which would otherwise favor a Gabonese forum.[8]  Indeed, there are cases which hold that

---

[7] The plaintiffs have submitted affidavits from various medical providers attesting to Irwin's present medical condition, her condition going forward, and the relative availability of medical care in Gabon.  The defendant, obviously, has not had the opportunity to conduct its own medical examination of Irwin, nor have we been provided any medical records.  For purposes of this motion, however, we will assume that Irwin's present condition is as she describes.

[8] See Part II.C.1(e), infra, for a further discussion of this issue.

the plaintiff must litigate in a forum not of her choosing even though the plaintiff suffers from physical disabilities.

In <u>Gonzales v. P.T. Pelangi Niagra Mitra Int'l</u>, 196 F. Supp. 482 (S.D. Tex. 2002), the plaintiff was rendered a quadriplegic while working on a barge in Indonesia.  In granting the defendants' motion to dismiss on the grounds of *forum non conveniens*, the court acknowledged that while travel to Indonesia may prove quite burdensome for the plaintiff, the difficulties the plaintiff might encounter were not so insurmountable to warrant trying the case in the United States.  <u>Id</u>. at 490.  Similarly, in <u>Miller v. Regency Maritime Corp.</u>, 824 F. Supp. 200 (N.D. Fla. 1992), a case involving a forum selection clause in a cruise ticket contract, the plaintiff alleged that due to her injuries aboard the defendants' ship, she was physically incapable of traveling to New York to pursue the action.  In upholding the forum selection clause requiring litigation in New York, the court held that a letter from the plaintiff's doctor stating her inability to travel, even if taken as true, did not render enforcing the forum selection clause unreasonable.  <u>Id</u>. at 201-02.[9]

---

[9]  Likewise, in <u>Karrels v. Adolph Coors Co.</u>, 699 F. Supp. 172 (N.D. Ill. 1988), the plaintiff was rendered a quadriplegic after a swimming accident in defendant's pool in Indiana. The plaintiff filed suit in Illinois, and the defendants moved for a change of venue to Indiana. The plaintiff argued against the transfer because travel to Indiana would be burdensome physically, emotionally and financially and that plaintiff required some level of daily care.  <u>Id</u>. at 175.  In granting the defendant's motion to transfer, the court emphasized that only the Indiana court could join a non-party, and that the defendant should have an opportunity to join a non-party who may share blame if the defendant were to be found liable.  <u>Id.</u> at 177.  In addition, the court stated:  "[W]e are not unaware of or indifferent to plaintiff's physical condition; but, just as we must consider the difficulties [plaintiff] would face if this litigation proceeds in Indiana, so too must we consider the difficulties the defendants would face if this litigation proceeds in Illinois."  <u>Id</u>. at 175.

Moreover, what is not to be overlooked is that Irwin will not be in Gabon during pretrial proceedings, any more than Irwin would be present in the United States. If the case is litigated in Gabon, WWF-US is willing to enter into an agreement with plaintiffs' counsel for the plaintiffs' pretrial testimony to take place in Scotland, [10] as opposed to Gabon, which would be permitted by Gabonese procedure. (Supplemental Declaration of Josette Olendo ["Olendo Supp. Dec."], attached hereto as Exhibit 1, at ¶¶ 4, 6.) Moreover, Missa, Irwin's husband, will presumably be available to attend the Gabonese pretrial proceedings in person if he so desires. Surely, it is better to minimize Irwin's travel while litigating in the proper forum than it is to litigate in an improper forum on the mere possibility that Irwin may suffer complications and be treated better in Washington, D.C.

The plaintiffs also suggest a possible violation of due process if Irwin is required to litigate in Gabon where she will not be able to attend the proceedings personally. But even a domestic plaintiff does not have an absolute right to attend his or her trial in person. A foreign non-resident plaintiff could not possibly be afforded any greater rights. See, e.g., Effron v. Sun Line Cruises, 67 F.3d 7, 11 (2d Cir. 1995) (holding that an American plaintiff was bound by a forum selection clause designating Greece as the proper forum in a cruise contract dispute; "[t]he right to a day in court means not the actual presentation of the case, but the right to be duly cited to appear and to be afforded an opportunity to be heard."); Pratt v. Silversea Cruises, Ltd., 2005 U.S. Dist. LEXIS 14339, at *11-*12 (N.D. Cal. July 12, 2005) (rejecting plaintiff's claims that

---

[10] In any event, the testimony regarding Irwin's injuries and her current and future medical condition will be provided by Irwin's medical experts, not by Irwin herself, and Irwin's testimony regarding what, if anything, was remembered of the accident and Irwin's life post-injury will be duplicative of the testimony of Missa. By all accounts, Missa is perfectly capable of traveling to Gabon for whatever proceedings take place there, and plaintiffs' experts, being hired by the plaintiffs, can proceed to trial anywhere.

her physical disability made her unable to travel from California to Florida and that the forum selection clause between the parties should not be enforced; "in civil case[s], a plaintiff may pursue a claim without appearing in court in person").[11]

Indeed, courts have routinely held that trial procedures in foreign courts which would not otherwise be constitutionally acceptable in United States federal courts are not grounds for refusal to dismiss a case to a foreign forum.  See, e.g., Lockman Foundation v. Evangelical Alliance Mission, 930 F.2d 764, 768 (9th Cir. 1991) (holding that a lack of a jury trial in Japan did not render it an inadequate forum); In re Union Carbide Gas Plant Disaster, 809 F.2d 195, 205 (2d Cir.), cert. denied, 484 U.S. 871 (1987) (holding that a lack of a jury trial in India did not render it an inadequate forum).

> **(b)    Plaintiffs' <u>assumptions</u> of WWF-US's liability are unfounded, and plaintiffs disregard the important witnesses pertaining to this issue who are located in Gabon.**

The plaintiffs would have the Court find liability against WWF-US based upon a statement of Gabon law from plaintiffs' Gabonese attorney and accepting, as factually accurate and conclusive, various assertions in the Shell-Gabon report and the police report.  Both reports

---

[11] Helminski v. Ayerst Laboratories, 766 F.2d 208 (6th Cir. 1985), cited by the plaintiffs, does not support their position.  Helminski dealt with an American minor plaintiff who was involuntary excluded from the courtroom during the liability phase of his products liability trial due to his physical and mental condition, without a hearing on whether his presence would have unfairly prejudiced the jury in his favor.  In Adkins v. Service Wire Co., 2002 U.S. Dist. LEXIS 21089 (S.D.W.V. Oct. 31, 2002), a case involving a motion to transfer venue to Texas, the court noted that factors favoring a West Virginia forum included the Ohio plaintiff's medical condition (he was a quadriplegic).  The court also deemed important the facts that the plaintiff lived six miles away, most if not all the testimony on current and future medical issues would be done by West Virginia medical personnel, and the West Virginia defendant had several current employees in Texas who could be called as witnesses.  These additional factors are not present in the instant case.

are hearsay and inadmissible.[12]  The critical testimony from these authors is located in Gabon, not the United States.  Even if these reports established liability against WWF-US (which we dispute), the critical evidence (by plaintiffs' own admission) to prove this point can only be secured in admissible form in Gabon.

The plaintiffs allege that they secured passage on this boat from Cecotour, a Gabonese entity.  The plaintiffs assume – with no admissible evidence – that the acts and omissions (if any) of Cecotour can be imputed to WWF-US.  This requires not only discovery as to Cecotour (documentary evidence located in Gabon, not the United States),[13] but also an analysis of Gabonese law as it pertains to such an association and to the liability of the members of such an association.  Plaintiffs' blanket assertions of WWF-US's liability for the issuance of the tickets, the employment and/or control of the pilot and/or Bourgeois, and the alleged ownership of the boat assumes a massive amount of hearsay, gossip and speculation.

The plaintiffs also reference the Shell-Gabon report which states:

---

[12] Plaintiffs cite a report from Shell-Gabon that refers to the boat in which the plaintiffs traveled as the "WWF boat."  This is only a shorthand reference, and there is no evidence that anyone at Shell-Gabon had any first-hand knowledge of the actual entity that owned the boat or employed the pilot.  In any event, the individuals who wrote this report or contributed to its findings are located in Gabon, not the United States.  In addition, in a memo such as this, there is no obligation for anyone affiliated with WWF to correct Shell-Gabon on Shell-Gabon's shorthand references – the failure to do so can hardly be construed as an admission against interest.

[13] Although this is concededly not a document-intensive antitrust case, the plaintiffs' argument that WWF-US can procure documentation from WWF International's Gabon office flies in the face of the fact that WWF-US has no present ownership or management authority over any WWF office in Gabon (Jamar Dec., ¶ 8).  WWF-US and WWF-International are not the same entity.  WWF-US merely licenses the "WWF" initials and panda logo from WWF-International (Jamar Dec., ¶ 5.)  Plaintiffs' suppositions as to ownership and control between the WWF entities does not change the simple fact that there is no means for either plaintiff or WWF-US to compel any documents from Gabon.

> Neither of the 2 boats had (sufficient) navigational lighting. The WWF boat had a handheld torch (which was used at the time of the accident) as a means of lighting, the other boat had none.

Plaintiffs would accept this Shell-Gabon report, written by an unknown author obviously located in Gabon, as proof of WWF-US's liability. However, this report raises more questions than it answers. Is lighting required by Gabonese law for boats of this type traversing the N'dogo Lagoon in Gamba? Is a flashlight sufficient lighting for the "WWF boat"? Did the pilot of the other boat see the lighting on the "WWF boat"? Who at Shell-Gabon investigated the accident? What were their qualifications with regard to accident reconstruction or Gabonese law? What is Shall-Gabon's relationship with WWF? Did Shell-Gabon or the author of the report have any interest, biases or liability concerns which could possibly affect their reporting of the accident? These and other questions can only be answered in Gabon.

In addition, plaintiffs' list of witnesses does not tilt the balance of the private interest factors in favor of a Gabonese forum. First, with regard to the plethora of unnamed medical experts plaintiffs intend on calling as witnesses, the location of these experts is irrelevant to a *forum non conveniens* inquiry. See, e.g., Varnelo v. Eastwind Transp., 2003 U.S. Dist. LEXIS 1424, at *93 n.46 (S.D.N.Y. Feb. 3, 2003) (noting that in the context of a *forum non conveniens* inquiry, "to the extent the parties intend to rely on expert witnesses, the location of such witnesses is entitled to little weight").[14] Plaintiff can find medical or other experts in Gabon, Scotland or elsewhere who are willing to travel to Gabon to testify.

---

[14] See also Potomac Capital Invest. Corp. v. Koninklijke Luchtvaapt Maatschapplj N.V., 1998 U.S. Dist. LEXIS 2343, at *22-*23 (S.D.N.Y. Mar. 4, 1998) ("The location of expert witnesses, however, is entitled to little weight.") (listing cases); Cagle v. Cooper Cos., Inc., 1996 U.S. Dist. LEXIS 8808, at *14 n.4 (S.D.N.Y. June 20, 1996) ("We do not focus on the location of expert witnesses for purposes of this exercise [defendant's motion to transfer venue] since they are assumed to be available wherever their sponsoring party wishes them to appear.").

The two passengers on the plaintiffs' boat at the time of the accident, Wim Bergmans and Olivier Pauwels, can also be available in a Gabonese litigation. Dr. Pauwels, by plaintiffs' admission, resides in Gabon. Dr. Bergmans, while a resident of The Netherlands, is clearly cooperating with the plaintiffs. While he may prefer to travel to Washington, D.C., there is no indication that he would not be willing to travel to Gabon. In any event, if this case were litigated in Gabon, his pretrial testimony could be taken in The Netherlands (which he presumably would prefer even to travel to Washington, D.C.). Even though Gabon is not a signatory to the Hague Convention on the Taking of Evidence Abroad, and even assuming Dr. Bergmans is an unwilling witness, we are unaware of any provision in either Gabon or The Netherlands which would prohibit the issuance of letters rogatory by a court in Gabon to a court in The Netherlands, nor a Dutch court refusing to act on the same. The same holds true for Jean Bourgeais and Cecile Vautherin, both allegedly in French territory.[15]

The only individuals allegedly resident in Washington, D.C. area who the plaintiffs suggest might have any knowledge of the events surrounding this litigation are Kenneth P. Moorefield (former U.S. Ambassador to Gabon), David H. Kaeuper (former U.S. Ambassador to

---

Accord Griffith v. Mitsubishi Aircraft Int'l, Inc., 554 N.E.2d 209, 214 (Ill. 1990) ("This court has held that the location of expert witnesses should not be accorded undue weight in the *forum non conveniens* analysis; otherwise, parties to a lawsuit could easily frustrate the *forum non conveniens* doctrine through the selection of their expert witnesses.").

[15] While plaintiffs place great weight on the fact that Gabon is not a signatory to the Hague Convention, the only practical difference in compelling the attendance of unwilling witnesses among countries that are not signatories is that the executing authority acts on principles of comity between nations instead of the provisions of the Convention. See generally Restatement (Third) Foreign Relations Law of the United States, § 473, Reporters Note 1; U.S. State Department, Preparation of Letters Rogatory, at http://travel.state.gov/law/info/judicial/judicial_683.html. We are unaware of any authority for the proposition that The Netherlands or France would not act on letters rogatory from Gabon under principles of comity. (See Olendo Supp. Dec., Ex. 1, ¶ 5.)

the Republic of the Congo) and Jeffrey Burnham, a "Senior Official from the U.S. State Department." While the plaintiffs <u>speculate</u> that these individuals <u>may</u> have overheard Jean Bourgeais tell the pilot of the boat not to leave until the briefing was completed, such testimony is hardly central to the issues in the case when compared to the non-availability in the United States of the other witnesses.

Furthermore, the plaintiffs cannot demonstrate that these witnesses can, in fact, be compelled to give testimony in litigation conducted in the United States due to the provisions of the State Department's Touhy regulations, 22 C.F.R. §§ 172.1 – 172.9, which provide that both current and former State Department employees cannot be compelled to provide testimony such as is sought here (or even voluntarily agree to depositions) absent approval of the Director General of the Foreign Service and Director of Personnel or the Office of the Legal Advisor, and that the department has discretion in deciding whether to comply with discovery demands and requests. <u>Id</u>. at §§ 172.4, 172.8. And assuming no Touhy problems, their depositions can consensually be taken in Washington, D.C.

In summary, the witnesses identified by the plaintiffs do not compel a determination that a forum other than Gabon is the more appropriate and convenient forum to hear this dispute. The pilot of the "WWF boat" is in Gabon, the pilot of the other boat is in Gabon, the owner of the other boat is in Gabon, plaintiffs' co-passenger Pauwels is in Gabon, the author of the police report is located in Gabon, the author of the Shell-Gabon report (which apparently forms the basis of plaintiffs' claims of liability against WWF-US) is in Gabon, and the first responders to plaintiffs' injuries are located in Gabon. The location of witnesses clearly favors a Gabonese forum.

      (c)      **In a tort case such as this, the inclusion of the owner and pilot of the <u>boat which was determined to have caused the accident is vital.</u>**

It is perhaps a sad commentary on the times we live in when the plaintiffs can state that it is perfectly fair and reasonable for litigation to proceed against a defendant located in the United States when the actual tortfeasors – the owner and operator of the boat accused by local authorities as having caused the accident, Jean-Martin Rebellah and Igor Bipakila – are unavailable and considered by the plaintiffs to be unnecessary. This is all the more absurd when the only grounds for litigating in the United States (other than the plaintiff's stated preference for U.S. hospitals, if needed) is that three State Department diplomats who happened to be in a meeting which may or may not have delayed the beginning of the boat trip may or may not be subject to compulsory process in the District of Columbia.

As stated in our moving brief, courts throughout the country hold that the inclusion of otherwise unavailable third-party defendants is critical in *forum non conveniens* analysis. While plaintiffs may believe such additional defendants are of no import, it is of course of vital import to WWF-US, and in *forum non conveniens* analysis, the interests and burdens of the defendant are given weight. In this regard, <u>Pain</u> is precisely on point. There the court held, "[c]learly, the inability of the district court to accord <u>full relief</u> suggests that it is inferior to a forum which might possess jurisdiction over <u>all significant parties</u> to the dispute." <u>Pain</u>, 637 F.2d at 790-91 (emphasis added).

Plaintiffs reliance on <u>Reed-Walen v. Hansen</u>, 933 F.2d 1390 (8th Cir. 1991) on this point fails to acknowledge that the court found in <u>Reed-Walen</u> that the defendants did not allege their defense would be greatly impaired without the ability to implead the Jamaican boat driver. <u>Id</u>. at 1398. WWF-US has here so alleged. Furthermore, with regard to the availability of witnesses,

17

the Reed-Walen court noted that according to the record, the driver of the boat which hit the plaintiff was unidentified, there was no record of the accident being investigated by Jamacian authorities and there was no hope of finding the actual perpetrator.  Id. at 1396-97.  Here, the pilot and owner of the boat have been identified, there is no dispute that the accident was investigated by local authorities, and the author of the police report has been similarly identified.

### (d)    There is a need to view the accident scene.

The plaintiffs argue that a view of the accident scene is unnecessary as the police report and Shell-Gabon report establish WWF-US's liability.  Of course, in a United States court, these documents neither establish liability nor are they even admissible for the truth of the matters asserted therein.  Given that liability is not established, a view of the accident scene is important.  As stated in our moving brief, the placement of the boats at the time of the accident, the width of the water passage at the location of the accident and rocks, trees or other obstructions affecting visibility are all important factors addressing the issue of liability.[16]  Moreover, a viewing of the accident scene may answer questions as to how the pilot of the other boat did not see the lighting on the "WWF boat."  It would be impossible to conduct such a viewing if the trial of this case is conducted in the District of Columbia.

### (e)    "Other practical problems" do not point to a United States forum.

Plaintiffs' citation to the "other practical problems" factor in *forum non conveniens* analysis is nothing more than a rehash of their primary argument, made several times throughout

---

[16] The police report itself includes a diagram reconstructing the accident, showing the relative dimensions of the river and the local landmarks, indicating that the local authorities thought such issues were important.  (See Jamar Dec., Exhibit A.)

18

their brief,[17] that WWF-US should not be permitted properly to mount its defense to the allegations brought against it in the logical forum for this dispute – Gabon – because the plaintiff fears that possible complications resulting from her air travel would likely be better treated in the United States.  While plaintiffs cite to numerous cases where courts have mentioned the physical condition of the plaintiff as a factor to consider, these cases are all distinguishable, particularly in that all but one involved a United States resident plaintiff, not a foreign national, attempting to keep an action in the United States.  Moreover, the cases cited by the plaintiffs that involve plaintiffs seeking not to travel <u>anywhere</u> are hardly applicable to the present case where the plaintiff is seeking to travel thousands of miles in one direction rather than thousands of miles in a different direction.

In <u>Reed-Walen</u>, <u>supra</u>, much relied upon by the plaintiffs, a Minnesota citizen was injured when an unidentified Jamaican citizen struck her on his motorboat near the beach of a Jamaican resort owned by a Missouri couple.  While the allowance of the defendants' *forum non conveniens* motion was reversed by the Eight Circuit, the court's primary grounds for reversal was the district court's failure to give proper weight to the  fact that both the plaintiff and defendants were United States citizens, <u>Reed-Walen</u>, 933 F.2d at 1394, a situation not present here.  The court's reference to the plaintiff's "practical and economic position" was made in the specific context of the plaintiff being a United States citizen.  <u>Id</u>. at 1398 n.11.  In addition, the Eighth Circuit seemed primarily concerned with the plaintiff's financial inability to retain

---

[17] The fact that the plaintiffs mention Irwin's medical condition on numerous occasions in various points in their brief does not, by sheer weight of words, increase whatever significance may be assigned to this factor.

counsel in Jamaica, rather than her physical limitations.[18] Id.  The court concluded, "[l]ike all the factors, the plaintiff's ability to litigate in a foreign forum is simply one consideration."  Id.

Schexnider v. McDermott Int'l, 817 F.2d 1159 (5th Cir. 1987), cited by the plaintiffs, also dealt with an American plaintiff wishing to sue in an American forum.  Id. at 1163.  The case is distinguishable from the instant case, *inter alia*, in that many of the plaintiffs' witnesses were in the United States, the defendants had not shown inconvenience, and the case had already been extensively litigated through pretrial discovery in the federal court in Louisiana.  Id. Adkins v. Service Wire Co., 2002 U.S. Dist. LEXIS 21089 (S.D.W.V. Oct. 31, 2002), involving a motion to transfer between district courts, also dealt with an American plaintiff.  Adkins is distinguishable, *inter alia*, in that the plaintiffs' treating doctors were in West Virginia (unlike the instant case where plaintiffs' treating doctors are not in the United States) and the witnesses identified by the defendant necessitating transfer to Texas were the defendant's present employees who obviously could be compelled by the defendant to testify anywhere.  Id. at *13- *14.[19]  In Nikac v. Pozzi, 172 F. Supp. 2d 414 (S.D.N.Y. 2001) , while a motion to transfer venue was denied, in part, due to plaintiff's paraplegic state, this case is of scant relevance as the motion to transfer sought transfer within a single district court – from Manhattan to Westchester County, New York – and did not implicate other interests such as availability of third-party defendants, witnesses, and choice of law issues.  Finally, in Chesler v. Trinity Indus. Inc., 1999

---

[18] The plaintiffs do not allege that they cannot afford to litigate in Gabon.

[19] As stated in our moving papers, WWF-US does not employ any witnesses located in Gabon or elsewhere who would have first-hand knowledge of the events leading up to the accident.  The only WWF witnesses in the United States would be witnesses, such as Mary Jane Jamar, who could testify as to WWF-US's corporate particulars, and WWF-US has agreed to make them available in Gabon.

U.S. Dist. LEXIS 10587 (N.D. Ill. July 6, 1999), the court denied a motion to transfer a case

from Illinois to Nebraska, in part, because the wheelchair-bound Illinois plaintiff's damage

witnesses were all located in Illinois.  Here, Irwin's damage witnesses are not located in the

United States, and they can equally travel from the United Kingdom to Gabon to provide

testimony on the plaintiffs' behalf. [20]

     The plaintiffs also argue that the "psychological hardship" associated with Irwin's having

to return to Gabon to litigate the case -- hardship apart from Irwin's present medical condition

and her preference for post-trip access to United States medical care over Gabon's -- is a factor

weighing in their favor.  Such a position is completely unwarranted.  Unlike the situations in the

cases cited by the plaintiffs, here there is no evidence or allegation that Irwin is fearful for her

personal safety in returning to Gabon due to the anticipated actions of governmental authorities

or other third-parties.[21]   Again, this is a case concerning a boat accident, not a criminal case or a

case tinged with political repercussions.  While Irwin may be uncomfortable in returning to the

"scene of the accident," such psychological hardship has never been a sufficient factor

---

[20] Indeed, in the only case cited by the plaintiff involving a foreign injured plaintiff, Castanho v. Jackson Marine, Inc., 484 F. Supp. 201 (E.D. Tex. 1980), aff'd in part and appeal dismissed in part, 650 F.2d 546 (5th Cir. 1981), the court denied the *forum non conveniens* motion based upon a variety of factors other than the plaintiff's injured state.  These included the availability of employee witnesses in the original forum and the plaintiff's fear that he would not be able to collect a judgment in the alternative forum. Id. at 206.

[21] The cases the plaintiffs cite for Irwin's "personal safety" argument, Iragorri v. United Technologies Corp., 274 F.3d 65 (2d Cir. 2001) (en banc), Rasoulzadeh v. Associated Press, 574 F. Supp. 854 (S.D.N.Y. 1983), aff'd, 767 F.2d 908 (2d Cir. 1985), Cabiri v. Assasie-Gyimah, 921 F. Supp. 1189 (S.D.N.Y. 1996), and Galvis Mujica v. Occidental Petroleum Corp., 381 F. Supp. 2d 1134 (C.D. Cal. 2005), all involved allegations by the plaintiffs that their personal safety was in danger due to retaliation from some governmental agent or third-party if the case was sent to the alternate forum.  Here, there is no allegation that Irwin's safety is in danger by governmental authorities or other third-parties in Gabon.

warranting denial of a *forum non conveniens* motion.  See Poole v. Brown, 706 F. Supp. 74 (D.D.C. 1989).

In Poole, a six-year old child (a citizen of the United Kingdom residing in Ziare) was mauled by a dog owned by a United States citizen then residing in Ziare.[22]  The court granted the defendant's *forum non conveniens* motion, noting that the private interest factors, including the relative ease of access to sources of proof, tipped in favor of Zaire, even though certain medical damages proof was to be found in England.  The court also held that the public interest factors overwhelmingly pointed to Zaire as the proper forum given that the law of Ziare would control and the District of Columbia had no connection with the matter, save for the current residence of the defendant.  Id. at 77.[23]  The instant case is no different, and the private interest factors weigh in favor of a Gabonese forum.

2.     **The public interest factors also favor dismissal.**

The plaintiffs are quick to dismiss an analysis of the public interest factors as unnecessary, arguing that the weight of the private interest factors tip in their favor.  However, as stated herein and in our moving memorandum, the private interest factors so overwhelmingly favor a Gabonese forum that dismissal should be granted on the private interest factors alone.

---

[22] The dog inflicted serious injuries to the child's face, and the child was forced to undergo painful rabies shots.  Id. at 75.  The complaint alleged the child was permanently disfigured, suffered pain and trauma, and would be forced to undergo further surgery.  Id.

[23] In Wilcox v. Holiday Inns, 1998 U.S. Dist. LEXIS 3105 (S.D.N.Y. Mar. 17, 1998), cited by the plaintiffs, the New York plaintiff's fear of returning to the Bahamas, where she was raped, was seen as a valid reason why New York plaintiffs would want to litigate in a New York forum.  Id. at *5-*6.  The presumptions accorded to the domestic plaintiffs in Wilcox are not present here.

But even if the issue were a close one, an analysis of the public interest factors overwhelming favor a Gabonese forum.

The basic principles enunciated by the <u>Pain</u> court with regard to the public interest factors are all critically relevant to the instant case:

> Three principles may be derived from the list of public interest factors enunciated in <u>Gilbert</u>: first, that courts may validly protect their dockets from cases which arise within their jurisdiction, but which lack significant connection to it; second, that courts may legitimately encourage trial of controversies in the localities in which they arise; and third, that a court may validly consider its familiarity with governing law when deciding whether or not to retain jurisdiction over a case.

<u>Pain</u>, 637 F.2d at 791-92 (footnotes omitted).  As set forth in our moving brief, Gabon has far closer ties to the incident than the District of Columbia since the accident took place there, Gabonese authorities investigated it, liability is predicated on violations of Gabonese law (as vigorously alleged by the plaintiffs in their Complaint), and the plaintiff Irwin was treated at two separate facilities in Gabon, as well as in Johannesburg, South Africa.  The fact that there was a police investigation into the incident demonstrates the acute interest that Gabon has in the outcome of this lawsuit. See <u>Union Carbide</u>, 634 F. Supp. at 863.   This is essentially a two-vehicle tort case that, had it occurred in the United States, would plainly be judged by local law applying local standards and local knowledge of the circumstances.  It is the epitome of a "localized controversy."

There are also administrative difficulties in litigating this case in this forum, given the distance between this court and the majority of witnesses and evidence, <u>see</u> <u>Gonzalez v. Naviera Neptuno A.A.</u>, 832 F.2d 876, 879 (5th Cir. 1987), and the fact that many potential witnesses speak only French and most Gabonese documents would be written in French. <u>See, e.g.,</u>

23

Stalinski, 41 F. Supp. 2d at 764 (noting that the need to apply a different language weighs in favor of dismissal).

Gabon, the site of the accident, also has a much stronger interest than the District of Columbia in deterring any conduct deemed to have caused the accident. The plaintiffs allege that the boat in which they were traveling lacked navigational lighting and that the passengers were not offered or told to wear life jackets, both allegedly violations of Gabonese law. (Complaint, ¶ 11.) The police report concludes that the other boat, piloted by Bipakila, failed to follow "the rules and spirit of the maritime navigation code." (See Jamar Dec., Exhibit B.) Gabon has a much stronger interest than the United States in ensuring that its navigational laws are followed. Moreover, if the cause of the accident was the conduct of the other boat pilot -- as suggested in the police report -- Gabon has an interest in ensuring that its residents not operate watercraft on Gabonese waters in a negligent manner. Gabon has a further interest in ensuring that visitors and others conducting research in the Gamba Complex (a national park) be provided safe transportation.

As to the fourth factor --  avoiding unnecessary problems in choice-of-law and the application of foreign law -- disputes should be resolved in a court "that is at home with the law that must govern the action." Gilbert, 330 U.S. at 509; De Melo, 801 F.2d at 1064. The plaintiffs concede that Gabonese law would apply to this litigation, including their assertions that there were violations of Gabonese law in the maintenance and operation of the boat which transported them. Gabonese law would also likely determine whether Cecotour had successfully established itself as an independent Gabonese entity and therefore whether its actions can or cannot be attributed to WWF. Given the fact that the accident took place in Gabon, that the alleged contract for the trip was entered into in Gabon, that the plaintiff Irwin was initially

24

treated for her injuries in Gabon, that the Gamba Complex in Gabon where the accident occurred is a Gabonese national park (Complaint, ¶ 7), and that the pilots of the boats involved in the accident were Gabonese, Gabon is the jurisdiction with the more substantial interest in the issues and a court in Gabon is in the best position to interpret and apply its law.

For these reasons, both the private and public interest factors overwhelmingly favor dismissal of this litigation in favor of a Gabonese forum.

## III.  CONCLUSION

This litigation should be dismissed in favor of a Gabonese forum under the doctrine of *forum non conveniens*.  The weight of the private and public interest factors tilt overwhelmingly in favor of a Gabonese forum, and the courts of Gabon constitute an adequate, alternative forum to hear this dispute.

DATED:  February 24, 2006                    Respectfully submitted,


                                             */s/ Rodney E. Gould*
                                             _____
                                             Rodney E. Gould, *pro hac vice*
                                             RUBIN, HAY & GOULD, P.C.
                                             205 Newbury Street, P.O. Box 786
                                             Framingham, MA  01701-0202
                                             508-875-5222 (telephone)
                                             508-879-6803 (fax)

                                                     -and-

                                             Robert A. Salerno (D.C. Bar # 430464)
                                             DLA PIPER RUDNICK GRAY CARY US LLP
                                             1200 Nineteenth Street, N.W.
                                             Washington, DC  20036-2412
                                             202-861-6254 (telephone)
                                             202-689-8556 (fax)

                                             Attorneys for Defendant
                                             WORLD WILDLIFE FUND, INC.

25